SIM BURK V. STATE OF NEBRASKA.

FILED JUNE 7, 1907.   No. 14,837.

1. **Criminal Law:** ACCUSED AS WITNESS: INSTRUCTIONS. Where a person on trial for a crime testifies in his own behalf, he becomes as any other witness, and his credibility should be subjected to the same tests as are legally applied to other witnesses; and it is error for the court to give undue prominence to the fact of defendant's interest in the result of the prosecution by repeatedly calling the attention of the jury thereto, and informing them that they must consider that fact in determining the weight and credibility of his evidence.

2. **Rape:** EVIDENCE. In order to sustain a conviction for the crime of statutory rape, the record must contain some evidence corroborating the testimony of the prosecutrix as to the principal fact of sexual intercourse with the defendant; and, where the prosecutrix is over 16 years of age at the time of the alleged commission of the crime, the evidence should show, beyond a reasonable doubt, that she was not previously unchaste.

19

ERROR to the district court for Richardson county: WILLIAM H. KELLIGAR, JUDGE. *Reversed.*

*C. F. Reavis,* for plaintiff in error.

*W. T. Thompson, Attorney General,* and *Grant G. Martin, contra.*

BARNES, J.

Sim Burk, hereafter called the defendant, was convicted of the crime of statutory rape on the person of one Flora McMahon, and was sentenced by the district court for Richardson county to imprisonment in the state penitentiary for a period of three years. To reverse that judgment he has brought the case here by a petition in error.

The information on which he was tried contained three counts. The trial court, however, withdrew the second and third counts from the consideration of the jury, and he was convicted on the first count of the information, which charged him with having carnal knowledge of the prosecutrix, with her consent, on the 29th day of April, 1904, she being a female child of the age of 16 years, not previously unchaste, and he being a male person over 18 years of age.

The first question argued in the defendant's brief is the contention of his counsel that the evidence is not sufficient to sustain the verdict, for the reason, among other things, that the evidence of the prosecutrix as to the principal fact is wholly uncorroborated. This question will not be considered in the order in which it is presented, but will be referred to hereafter.

It is next urged as one of the grounds for a reversal of the judgment that the trial court erred in instructing the jury as follows: "First.—The jury are instructed that, when the defendant testifies in this case, he becomes as any other witness, and his credibility is to be tested by and subjected to the same tests as are legally applied to any

other witness, and in determining the degree of credibility that shall be accorded to his testimony the jury have the right to take into consideration the fact that he is interested in the result of the prosecution, as well as his demeanor upon the stand, and the fact that he has been contradicted by other witnesses, if the jury believe from the evidence that he has been so contradicted, but the degree of credit given to each and all of the witnesses is a question for the jury alone, and not for the court." A defendant in a criminal case may, under the laws of this state, be a witness on his own behalf or not, as he may see fit, and, when he goes upon the witness stand, he is to be treated precisely the same as any other witness in the case. He cannot be compelled to be a witness, and in that particular only does his position differ from any other person who is actually called as a witness. The difference extends no further and has no greater significance. The first part of the instruction above quoted, in which the jury were told that, when the defendant testifies in this case, he becomes as any other witness, and his credibility is to be tested by and subjected to the same tests as are legally applied to any other witness, and in determining the credibility which shall be accorded to his testimony the jury have the right to take into consideration the fact that he is interested in the result of the prosecution, as well as his demeanor on the stand, is a correct statement of the law, and in no manner objectionable. But the vice of the instruction lies in that part of it by which the jury were told that if the defendant had been contradicted by other witnesses, if they should believe from the evidence that he had been so contradicted, that fact should be considered in determining the degree of credit to be given to his testimony. That part of the instruction seems to be an invasion of the legal rights of the defendant. It is applying a test to his evidence, to determine its weight and credibility, that is not applied to any other witness in the case, namely that his credibility may be affected by the fact that some other witness has contra-

dicted him. As this instruction was given to the jury, it stated in effect that the mere fact of contradiction alone, no matter whether the contradicting witness was worthy of belief or not, or whether or not he was a credible person, the sole fact of the contradiction should be considered in determining the weight of the defendant's evidence. We have some doubt, however, whether the giving of the instruction complained of as to the credibility of the accused as a witness would of itself require a reversal of the judgment. In *People v. O'Brien,* 96 Cal. 171, 31 Pac. 45, the supreme court of California said: "The court also gave an instruction, which has been several times approved here, with some hesitancy and criticism, however, directing the attention of the jury to the fact that the defendant had offered himself as a witness on his own behalf, and saying to them that in considering the weight and effect to be given to his evidence, in addition to noticing his manner and the probability of his statements, they could consider his relation to the case, and the circumstances under which he gave his testimony, the consequences to him resulting from the verdict in the case, and all the inducements and temptations which would ordinarily influence a person in his situation. * * * The construction which was placed upon it by those decisions has become a part of the provision itself, and we are not at liberty to depart from it. As a slight change in the phraseology of the instruction, however, is liable to be construed as going beyond the limits of what has been approved, it would be a safer course, and one which would work no injustice to the people, if it were entirely omitted from the instructions asked and given on behalf of the prosecution." We think this language is peculiarly applicable to this case. There seems to be no necessity for a special instruction in regard to the credibility of the accused when he offers himself as a witness, in addition to the general statement that the same tests are to be applied to his evidence as those applied to the evidence of any other witness. If, in addition to such an

instruction, the general instruction is given that the jury
are to be the judges of the credibility of all witnesses, and
that they may take into consideration the interest, if any,
which the witness appears to have in the result of the
litigation the bias or prejudice of the witness, if any such
appears from the evidence, the reasonableness of his tes-
timony when considered in connection with all of the other
evidence in the case, his conduct and demeanor while tes-
tifying, his opportunity for knowing the facts in regard
to which he testifies, the degree of intelligence which he
manifests, and all of the facts and circumstances in evi-
dence tending to corroborate or contradict his testimony,
it would seem to be sufficient. There is danger of preju-
dice against one charged with a crime of this nature.
If an innocent man is so charged and is confronted by a
false witness, it is dangerous to the interests of justice to
call the attention of the jury to the fact that he has the
highest possible interest to give such testimony as will
shield him from an unjust conviction, and so much of the
opinion in *Philamalee v. State,* 58 Neb. 320, as seems to
sanction an instruction like the one in question is dis-
approved.

It is also contended by the defendant that the court
erred in too often directing the attention of the jury to
the fact that his interest in the result of the prosecution
should be taken into consideration by them in determining
the weight and credibility of his evidence. It will be
observed that this statement was made a prominent feat-
ure of the instruction above quoted. This fact seems to
have been also referred to in paragraph No. 3 of the in-
structions, and it was again referred to in paragraph No.
4. Now the jury knew, as well as the counsel and the
court, that the defendant had a great and peculiar interest
in the result of the prosecution, and that fact was unduly
emphasized and was kept prominently before them by
the instructions complained of. In the case of *Clark v.
State,* 32 Neb. 246, it was said: "Where a person on trial
for a crime testifies in his own behalf, the court may

instruct the jury that in weighing his testimony they may consider his interest in the result of the suit. The court, however, cannot, by repeating its statement in that regard, give it undue weight or say aught calculated to disparage the testimony of the accused." It was further said in that case: "While it is true that the jury may consider the interest of the witness in the result of the suit in determining his credibility, yet it does not follow that his interest will prevent him from telling the truth. His testimony, notwithstanding his interest, may be entirely truthful and reliable. He may be an honest man falsely accused, whose testimony not only is true, but will bear the closest analysis. Neither the court nor the jury should assume that the testimony of a witness is false, nor so decide without cause. The facts in a case are to be determined from a patient, careful examination of the testimony of the several witnesses. From the necessity of the case the credibility of the witnesses must be determined by the jury, but there should be adequate cause for rejecting the testimony of any witness." In view of the foregoing, it would seem quite probable that, by frequently telling the jury that, in determining the credibility of the evidence of the defendant they should take into consideration his interest in the result of the trial, they were led to consider it their duty to give his evidence little or no weight in determining the question of his guilt. That this was prejudicial error there can be no doubt.

Having concluded, for the foregoing reasons, to reverse the judgment in this case, it is not absolutely necessary for us to consider the sufficiency of the evidence. We do not think, however, it would be out of place for us to briefly state our view concerning that matter. The prosecutrix testified as to the principal fact, in substance: That she went to the defendant's store, which is situated in the village of Rulo, in the daytime, during business hours, on the 29th day of April, 1904, to buy a pair of shoes; that the defendant, who was alone in the store at the time, told her that he would like to have sexual intercourse with

Burk v. State.

her; that she hesitated because she thought it was wrong, but finally consented, and he thereupon pulled down the curtains to the front windows, locked the glass door, which had no curtain at all, took her to the back end of the store, and had intercourse with her; that he then went to the front end of the store with her, put up the curtains, unlocked the door, and let her out upon the street or sidewalk; that there were numerous persons on the walk and street at the time, and she says this was repeated in the same manner later on at three different times; she could not remember, however, whether it was at noon or toward evening that the transaction occurred; in fact she could not fix the time of day when any of the acts of intercourse took place.  We have examined the record with great care, and are unable to find therein any evidence of any other witness or witnesses which corroborates the evidence of the prosecutrix as to the act of sexual intercourse on which the prosecution herein is predicated. No witness testifies that she was ever seen in Burk's company, that he ever paid the slightest attention to her, or that she was ever seen to go into or come out of his store under the circumstances detailed by her, or in fact at all, or at any time.

It further appears that there had been a fire in the same block in which the defendant's store was situated on the morning of April 29, and there were many people congregated on the street and in front of the store looking at the burning embers and talking over the matter of the fire, and yet no witness is produced who saw the prosecutrix enter or leave the store on that occasion.  It is contended by the state, however, that she was corroborated by the evidence of her father and mother, which is, in substance, that the defendant came to their house sometime in April, 1905, and said to the prosecuting witness: "What is that I hear about your charging me with being responsible for your condition.  You know it is not so, and you cannot look me in the face and say I am the cause of your condition."  That she looked him in the face and

said: "It is so." And defendant then said: "It cannot be so, for the first time was too long ago, and the second time it would be impossible." It would seem that this was no evidence of any fact or circumstance corroborating the evidence of the prosecutrix as to the principal fact, but was an attempt on the part of the state to prove an alleged confession of the defendant, and as such it might tend to establish his guilt, but, where such alleged con· fession or admission is of doubtful import and is positively denied by the defendant, it may reasonably be given but little weight by the jury. Again, the evidence shows without contradiction that the father of the prosecutrix had before that time been to one Jacob Sweinfurth, the father of a young man who had been keeping company with the prosecutrix for more than a year, and was in fact her sweetheart, and had attempted to extort money from him on account of the condition of his daughter. It further appears that the prosecutrix had been to the office of the county attorney of Richardson county and had attempted to induce that officer to file a complaint against young Sweinfurth, charging him with the crime of statutory rape, and that the county attorney had asked her whether or not she had ever had sexual intercourse before that time with any other men, to which she answered, "Yes." And he thereupon refused to prosecute Sweinfurth, who, it appears, on ascertaining her condition, had fled the county. It also appears from the evidence of the accused that, after the refusal of the county attorney to prosecute Sweinfurth, the father of the prosecutrix called upon the defendant, and, while protesting that he did not believe that the defendant was to blame for the condition of his daughter, still he proposed to settle the matter with him, and hush it up, if the defendant would give him money enough to pay the doctor's bill, to pay his wife for nursing and taking care of the prosecutrix during confinement, and a little spending money for himself; that the defendant denied any complicity in the matter, and declared he was innocent of the cause of the girl's down-

fall, and he would not give him "one five cent piece." He said: "I am not the father of that child and not to blame for her condition, and therefore I will not pay for anything of the kind." So it may be said the corroborating evidence, if any, was at least of doubtful character.

There is another feature of this case which should properly receive our consideration. In order to establish the defendant's guilt, it was as necessary for the state to prove beyond a reasonable doubt that the prosecutrix was not previously unchaste, as it was to establish the principal fact beyond such doubt. There is no evidence of her previous chastity except her own declaration, and this is discredited by her statement to the county attorney when she applied to him to prefer charges against young Sweinfurth, instead of the defendant, that she had previously had sexual intercourse with other men." Again, the record discloses that about nine months before she was delivered of her illegitimate child she ran away with Sweinfurth to Hiawatha, Kansas, and remained there over night with him; that her father telephoned to the sheriff at that place and had him bring the couple back to Rulo. It was also shown by the testimony of Mrs. Amanda Johnson that some three years before the trial took place, and before she claimed to have had sexual intercourse with the defendant, the prosecutrix was working for her; that she was keeping boarders, and that a young man by the name of Emmet Asher, who boarded with her, was keeping company with the prosecutrix; that on one occasion in the evening the prosecutrix and Asher locked themselves up in a room in her house and turned out the light; that, when she noticed that fact, she went round to the outside door and rapped, and demanded that the door be opened; that it was thereafter unlocked, and, when she went in, she found them in a compromising situation; that she compelled them to open the door between the room where they were and her sitting room; that later on she again found that door closed and locked, and on its being opened she found Asher and the prosecuting witness

in the same compromising position she had found them before. So it would seem that the evidence was sufficient to at least cast grave doubt upon the previous character of the prosecutrix for chastity.

Again, the prosecutrix testified in this case that she went to the county attorney for the purpose of filing a complaint against young Sweinfurth, charging him with the same crime for which the defendant herein was prosecuted; that, when asked why she did this, she testified that the defendant had offered her $150 if she would place the blame on Sweinfurth; that she was willing and intended for that sum to go into court and testify that young Sweinfurth was the author of her misfortune; that she was willing to commit perjury for that sum of money, and endeavor to procure the conviction of one who she now says was an innocent man.

We think we have sufficiently reviewed the evidence, and it seems to us that the prosecuting witness not only lacks satisfactory corroboration, but there is grave doubt of her previous chastity, and of the defendant's guilt. If this case is to be tried again, it would seem necessary for the state to produce at least some evidence corroborating the evidence of the prosecuting witness as to the principal fact on which this prosecution is based, and of the previous chastity of the prosecutrix.

For the foregoing reasons, the judgment of the district court is reversed and the cause is remanded for further proceedings according to law.

REVERSED.