HARRY WHETSTONE V. STATE OF NEBRASKA.

FILED MARCH 4, 1916. No. 19414.

Rape: EVIDENCE: CORROBORATION. In a prosecution for rape upon a female child not previously unchaste, proof of facts and circumstances justifying a finding, independently of her own testimony, that accused had the opportunity and the inclination to ravish her may be sufficient corroboration of direct and positive evidence by her that he did so.

ERROR to the district court for Keya Paha county: R. R. DICKSON, JUDGE. Affirmed.

Ed. D. Clarke, Ross Amspoker, Allen G. Fisher and William P. Rooney, for plaintiff in error.

Willis E. Reed, Attorney General, and Charles S. Roe, contra.

ROSE, J.

In the district court for Keya Paha county, defendant was convicted of rape, and for that offense was sentenced to serve a term of four years in the penitentiary. As plaintiff in error, he presents for review the record of his conviction.

Defendant insists that the sentence cannot be upheld because the verdict, as he views the evidence, is supported only by the uncorroborated testimony of prosecutrix. She was called as a witness, and in direct and positive

terms testified to defendant's felonious act as charged in
the information and to the time, place and manner of
its commission. She was at the time 15 years and 10 days
old. Unless she committed perjury, she was not previously
unchaste. Evidence to that effect is not disputed in the
record. Her story is believable. A motive for false testi-
mony on her part is not disclosed. Defendant was not
eligible as an honorable suitor, because he already had a
wife. At the time of the trial prosecutrix was not dis-
turbed by prospects of maternity or by pecuniary demands
of illegitimate offspring. There is no intimation of a pur-
pose from any source to demand or extort money from
defendant. According to the story of prosecutrix, the
offense was committed Saturday night, June 26, 1915, at
the home of Harrison Morrison, a farmer living with his
wife and two children five miles west of Norden. Prose-
cutrix was a relative of Morrison and had been in his
home a few days in the capacity of a domestic. In addi-
tion to her testimony, there is proof of these facts: Dur-
ing the afternoon of the day mentioned, defendant, alone
in a buggy, drove in a roundabout way to the home of
Morrison, knowing that it was the latter's custom to visit
Norden with his wife and children Saturday afternoon.
Defendant knew that prosecutrix had left her home a few
days earlier to go to Morrison's. When defendant arrived
there in the afternoon, all of the Morrison family, includ-
ing prosecutrix, were absent. Defendant waited there
alone until they returned from Norden, though he said
he had started to that village, a place to which he did not
go. In the evening he and prosecutrix conversed for a
time in a little vestibule opening into the kitchen of the
Morrison home. Night came on and defendant did not
leave. He was asked to stay all night, but declined.
Finally, his host evinced an intention to retire for the
night. Whereupon defendant intimated that he was about
to start home. After the Morrisons had all gone to the
second floor of the house to retire for the night, defendant
went from the kitchen into the sitting-room downstairs,

found prosecutrix there alone, and conversed with her. Though he had previously stated that he had stopped at Morrison's for protection from the rain, and had declined an invitation to stay all night, he left in the rain immediately after he had had the time and the opportunity to commit the crime. Proof of these corroborating facts and circumstances does not depend on the testimony of the prosecutrix. Evidence of the opportunity to commit the crime is uncontradicted. The inclination of defendant to ravish prosecutrix may fairly be inferred from the outlined facts and circumstances proved by other witnesses. Corroboration of a similar nature was held sufficient in *State v. McCausland,* 137 Ia. 354, the court saying:

"It was shown by the testimony of persons other than the prosecuting witness that defendant was seen with this young girl in a public place at a late hour on the night when the crime is alleged to have been committed, and circumstances were shown from which the jury could be justified in finding that he accompanied her from the place where they were first seen together through the street, and up a flight of stairs, where they entered a darkened room, which according to the story of the prosecutrix was the scene of the offense."

The direct and corroborating evidence is sufficient to sustain the conviction.

Other assignments of error are directed to the conduct of the presiding judge in interrupting the examination of witnesses, in preventing the answering of questions, and in asking other questions. In these respects the record shows that the trial court protected the rights of defendant, prevented error, and avoided unnecessary cross-examination, without making a mistake or prejudicing defendant.

Complaint is also made of rulings in giving and refusing instructions. No debatable question is raised by such rulings. The charge is exceptionally free from error. Every right of defendant was safeguarded. The instruc-

tions given covered the entire case and conformed to established rules of law applicable to the evidence.

AFFIRMED.

FAWCETT, J., not voting.

SEDGWICK, J., dissenting.

The crime of rape is one of the most detested of crimes. It is a crime against the virtue of womanhood. "The object of the statute is to protect the virtuous maidens of the commonwealth, to protect those girls who are undefiled virgins; and a female under 18 years of age and over 15 years of age who has been guilty of unlawful sexual intercourse with a male is not within the act." *Bailey v. State,* 57 Neb. 706. If this young girl was previously chaste and was ruined by this defendant, he richly deserves the punishment for rape which the statute provides may be 20 years in the penitentiary. If she was not a pure girl, the crime which this defendant has committed, if he has done the act charged, is principally in degrading himself and indirectly injuring his wife and children. That crime is not rape; it is adultery, and the punishment is a short term in the county jail. When the crime of rape is committed against a girl under the age of consent, the substance of the crime is the violation of her chastity, and must be proved beyond a reasonable doubt. "Where the prosecutrix is over 16 years of age at the time of the alleged commission of the crime, the evidence should show, beyond a reasonable doubt, that she was not previously unchaste." *Burk v. State,* 79 Neb. 241. The prosecuting witness, when she was asked the direct leading question by her attorney, said that she was not previously unchaste. The opinion makes a feeble attempt to show that she was corroborated as to the act itself, but there is no intimation in the evidence or in the majority opinion that she was corroborated as to her purity. "Unless she committed perjury, she was not previously unchaste. Evidence to that effect is not disputed in the record." This is all that is said in the opinion on this subject. There is such a great, such an immeasurable distance between a pure girl

and one who has trifled away or has been robbed of her virtue, that the law may well punish him who deliberately plans to destroy her by the extreme penalty. It is presumably just and reasonable that the gravamen of such a crime should be proved so as to remove all reasonable doubt of the guilt of the man charged. If it is required that the prosecuting witness should be corroborated in any particular, there is greater reason to require it upon this issue than upon any other. Generally, a wanton girl will not hesitate to swear to her own purity. When she yields her virtue, she yields all, and rarely retains a high regard for truth. If truthful, she is generally virtuous, and *vice versa*. A virtuous girl is known by all her acquaintances to be virtuous. It is no hardship to require conclusive proof. A wanton woman advertises that fact by her conduct and demeanor wherever she goes.

There is not only no corroboration as to the chastity of the girl, but also a total failure of corroboration as to the act itself. Everything named in the opinion as corroboration is equally consistent with innocence as with guilt. Morrison and his family were not in the habit of going to Norden every Saturday. It was only occasionally that they did so. They would be more likely to take the girl with them than to leave her at home alone. The defendant was as much in the habit of driving Saturday as were they. He and the Morrison family were old-time acquaintances and friends. The fact that defendant drove out of his way to go to Morrison's is equally consistent with innocence on his part. That he remained there in the storm until Morrison returned and did not go to Norden, that he visited with the family, and conversed with the girl for an hour "in the vestibule opening into the kitchen," furnishes no corroboration. They passed the evening in the usual social manner, and at about 10 o'clock Mr. Morrison asked the defendant to stay for the night. He declined, saying that he must be at home in the morning early to care for his stock. Mr. Morrison then announced that he would retire for the night. Mrs. Morri-

son started at once for their room at the head of the stairs, and Morrison followed her within a minute or two. Within five or ten minutes thereafter the defendant left for his home. In the meantime it is alleged that this crime was committed. The lights were burning, the doors were open, and considerable noise in any part of the little house could be heard throughout the building. The details of the commission of the alleged crime in those five or ten minutes are given solely by the prosecutrix, and this testimony of hers can, of course, furnish no corroboration of itself. Twice during the evening and after the two children had retired, Mr. and Mrs. Morrison went out of the house, and were gone one or two minutes; once when it was thought an automobile in which they were interested was passing, and once to close the door of the chicken house a couple of rods distant, and on one of these occasions the defendant and the girl were standing in the hall talking. The defendant had left his hat and gloves in the sitting-room, and he testifies that when Morrison declared that he would retire for the night the girl went into the sitting-room to get his (defendant's) hat and gloves for him, and he followed through the hall door which was left open, and could not at once find his hat and gloves, which delayed him possibly five minutes, and as soon as they secured his hat and gloves he went home.

In all this there is no proof of a single fact that tends to prove a disposition on his part to commit such a crime. Proof of opportunity alone without indication of any improper conduct will, of course, not amount to corroboration. The proof of opportunity is not sufficient. The evidence of Mr. and Mrs. Morrison shows that, when Morrison announced that he would retire, it amounted to an invitation to defendant to either stay for the night or go, and defendant acted accordingly. He started at once for his hat and gloves, and Morrison says he had left the house within five or ten minutes. Was a chaste and virtuous girl ruined in those five or ten minutes? Neither

the act itself nor the chastity of the girl is proved beyond a reasonable doubt.

HAMER, J., dissenting.

I dissent from the opinion of the majority.

1. There was no evidence tending to corroborate the testimony of the prosecutrix that she was chaste. I have read all the evidence. The girl and the man talked together after the Morrison family went upstairs to retire. Up to that time I am unable to find anything which tends to corroborate her story. Defendant was a young married man, and while he visited with Morrison he also talked to the girl in the sociable and easy way which is not uncommon in the country, where people do not isolate themselves, but visit and talk together. It was not at all strange that the defendant and Morrison should visit each other. They were in the habit of doing so. They exchanged work together at times. They were probably the very best of friends. I am unable to find any sort of corroboration in the story recited by the prosecutrix. If the crime was committed, as she says it was, it is difficult to understand how she could have been chaste at that time. She testified that they went into the front or south room, and then that he blew out the light which was burning there. She got a rocking chair and sat in it. That she did not intend to go away is apparent from the fact that she sat in the chair and did not go upstairs. If she had been a good girl and chaste, she would have cried out, and Mr. and Mrs. Morrison, who were lying awake in the bed upstairs and only a few feet distant from her, would have been down stairs in two or three seconds. If the prosecutrix was guilty, then the man was guilty, but he could not be guilty of rape, for the woman was not chaste.

2. The charge against the defendant is that the girl was under the age of 18 years, to wit, of the age of 15 years; that she was not previously unchaste; that the defendant unlawfully and feloniously made an assault upon her; and that he unlawfully and feloniously ravished and

carnally knew her. The charge is under the last clause of
section 8588, Rev. St. 1913, and contemplates that the act
is done with the consent of the prosecutrix. The informa-
tion does not allege that the act was committed "with her
consent." The necessary provision of the statute is left
out. The necessary facts therefore were not in the infor-
mation. The language of the statute is, "shall carnally
know or abuse any female child under the age of 18 years
with her consent." In *Bailey v. State,* 57 Neb. 706, it is said
in the body of the opinion: "To sustain a criminal convic-
tion it is not enough for the state to show that the person
indicted has violated the spirit of the statute, but the evi-
dence must show beyond a reasonable doubt that he has
offended against the very letter of the law." In *Burk v.
State,* 79 Neb. 241, it is said in the syllabus: "The evi-
dence should show, beyond a reasonable doubt, that she
was not previously unchaste." There was no evidence
touching this subject. In the body of the opinion in *Burk
v. State, supra,* it was said that, if the case had to be tried
over again, it would seem necessary for the state to pro-
duce some corroborating evidence as to the principal fact,
"and of the previous chastity of the prosecutrix."

3. The fourth instruction is to effect that the offense
must be committed with a "female under the age of 18
years with her consent." The defendant was not tried
for the offense described in the statute, and he was not
tried for the offense set out in the instruction. To pro-
ceed against the accused as if he unlawfully and felon-
iously ravished and assaulted her could not well have been
otherwise than to the prejudice of the defendant. He was
tried for violence.

4. Section 6 of the instructions given by the court con-
tains the following: "The doubt which the juror is al-
lowed to retain in his own mind, and under which he
should render his verdict of not guilty, must always be a
reasonable one. A doubt produced by undue sensibility
in the mind of any juror in view of the consequences of his
verdict, is not a reasonable doubt, and a juror is not

allowed to create sources of material doubt by resorting to trivial or fanciful suppositions and remote conjectures as to possible states of fact different from that established by the evidence. Hence, if, after a careful and impartial consideration of all the evidence, you can say that you feel an abiding conviction of the guilt of the defendant and are satisfied to a moral certainty, a certainty that convinces and directs the understanding and satisfies the reason and judgment of those who are bound to act conscientiously on the truth of the charge made against the defendant, then, and in that event, you are as jurors satisfied beyond a reasonable doubt. A reasonable doubt does not consist of possible or conjectural doubt, but a doubt that would justify an acquittal must be reasonable, and it must arise from a candid and impartial investigation of all the evidence in the case."

To say that a juror must justify himself for what he does as a juryman is to make him an object of suspicion. The tendency of that sort of an instruction is to intimidate the juror. That instruction originated in the anarchist cases tried in Chicago. Apparently it was framed to compel the jurors to disregard the doctrine of reasonable doubt.

5. In instruction 11, given by the court on its own motion, it is said that the prosecutrix need not be "corroborated" by the testimony of other witnesses; that it is sufficient if she shall be corroborated as to the material facts and circumstances which tend to support her testimony, and from which, together with her testimony as to the principal fact, the inference of guilt may be drawn. Some rule should have been laid down by the trial judge enabling the jury to rest their conclusion upon facts shown to exist in the case not dependent upon the testimony of the prosecutrix. This was not done.

6. The alleged facts, as the prosecutrix recites them do not seem probable. According to her testimony, Mr. and Mrs. Morrison went up to bed. They put a light on the bureau at the head of the stairs. There were no doors

in the way, and the light shone down to where the prosecutrix and the defendant were. There was also a stovepipe hole up through the ceiling. With the light shining down the stairway where Morrison and his wife had just retired to bed and were then awake, is it probable that the prosecutrix and the defendant would have taken their chances of discovery? "Q. Well, wait a minute; it shined down while they were up there? A. I suppose it did. Q. And you could see the light? A. No, I could not see the lamp, I could see the light. Q. Well, that is what I asked you, the light shone down stairs on you and Harry Whetstone, didn't it? A. Yes, sir. Q. And if either Mr. or Mrs. Morrison looked down from up there, they could see you standing there? A. Well, we wasn't there very long."

Mrs. Morrison testified that there was a light up at the head of the stairs nearly all the evening, and that it shone down where the defendant and the prosecutrix were standing. If the testimony of the Morrisons is truthful, the probability of the defendant's guilt would seem to be remote. Whatever the facts may be, they are not shown by the evidence to have had intercourse.

7. This man should not be sent to the penitentiary on the evidence presented against him. If this man is guilty of anything, it is adultery. There is no penitentiary sentence for that. Of course, we ought not to disregard legal rights. "A single act of sexual intercourse by a married man with an unmarried woman constitutes the crime of adultery." *State v. Byrum,* 60 Neb. 384. This defendant can be prosecuted for adultery under the facts shown, and, if found guilty, could be imprisoned in the county jail not exceeding one year. Section 8767, Rev. St. 1913.