OWEN R. OWENS V. STATE OF NEBRASKA.

[FILED JUNE 30, 1891.]

1. **Jurors**: BIAS. A juror in a criminal prosecution, disclosing on his *voir dire* that he has an opinion as to the guilt or innocence of the accused, based on rumor, and what he has heard in the court room, which will require evidence to remove, is incompetent, though he may state that he can render an impartial verdict under the law and evidence. (*Miller v. State*, 29 Neb., 437; *Curry v. State*, 4 Neb., 548; *Cowan v. State*, 22 Id., 523; *Olive v. State*, 11 Id., 1.

2. **The evidence** examined, and *held*, not to sustain the verdict.

ERROR to the district court for Gage county. Tried below before BROADY, J.

*Rickards & Prout*, for plaintiff in error.

*William Leese, Attorney General, contra.*

COBB, CH. J.

At the February term, 1890, the grand jury for Gage county presented an indictment against Owen R. Owens for incest, charging that on April 15, 1889, he feloniously, rudely, and licentiously cohabited with one Sarah Ann Owens, his daughter, as he then well knew. On the 24th of February the defendent plead not guilty. On the 5th of March there was a trial, and the jury found the defendant guilty as charged. A motion in arrest of judgment, and for new trial, having been heard and overruled, the defendant was sentenced to the penitentiary of this state for the term of seven years. On the trial various exceptions were taken to the admission of testimony by the state, the exclusion of evidence for the defense, and to instructions, and the refusal of instructions, by the court to the jury.

That the verdict and sentence are contrary to the evidence, and are not supported by it, together with eighteen other specified errors of the trial, are assigned to be considered in the petition of the plaintiff in error.

The first error presented is that of impaneling the juror, Joseph Ramsey, who was examined on his *voir dire*, and replied to the

Q. Do you know anything about this case?

A. Nothing, only what I have heard since I came into the court room.

Q. Have you heard the facts stated on which the case is founded?

A. Nothing more than rumor.

Q. What you heard, did it make any impression on your mind?

A. If it was proved, it has; if not, it has not.

Q. Then you have an impression now, have you not?

A. To a certain extent, if they prove the facts I have heard.

Q. And it is such an impression or opinion as would require evidence to remove, would it not?

A. Well, yes, of course.

By the court: You think, notwithstanding what you have heard, you could give the man a fair trial, do you?

A. Yes; certainly.

The challenge of the juror for cause was overruled by the court, and he was sworn and sat with the panel.

On April 30, 1890, there was heard here and decided on error to the district court of Gage county, the case of Miller under sentence to be hung for murder. On that trial the juror Garrison, having formed an opinion based on rumor, and from reading newspaper accounts, answered on his *voir dire* to the

Q. Will it not require some testimony to remove that opinion from your mind?

A. Yes; it will take some evidence.

Owens v. State.

Q. You could not sit in this jury box and commence at the beginning of the trial of the case, without having some testimony to remove the bias and prejudice against the defendant, or in his favor; is that not so?

A. Yes; I would have to have some testimony.

By the court: Notwithstanding any opinion you have formed, could you give this defendant a fair and impartial trial upon the law and evidence?

A. I can.

Q. Would you consider the testimony the same as if you had not heard anything about it?

A. Oh, yes. I would consider the testimony the same.

As to the error of impaneling this juror, the court said: "It is obvious that, under the rule laid down by this court in numerous cases, Garrison was not a competent juror. While he doubtless believed he could hear the testimony and render an impartial verdict, his private opinion, that would have to be overcome with testimony, would prevent him from doing so. The defendant was required to excuse the juror peremptorily, which exhausted his last challenge and was prejudicial error." (*Miller v. State*, 29 Neb., 437; *Curry v. State*, 4 Neb., 548; *Cowen v. State*, 22 Id., 523; 35 N. W. Rep., 405; *Olive v. State*, 11 Neb., 1; 7 N. W. Rep., 444.) This example sufficiently demonstrates the error directly parallel with it in the present case.

On the trial the court gave to the jury five instructions requested by the prosecuting attorney, and refused two; gave six instructions requested by the defense, with additions and modifications which are assigned as errors, and refused twenty. Of its own motion the court instructed as follows:

"The indictment is based upon the section of the statute that 'If a father shall rudely, or licentiously, cohabit with his own daughter, the father shall, upon conviction, be punished by imprisonment in the penitentiary.' There cannot be a cohabitation, within the meaning of this

law, without carnal knowledge, otherwise called sexual intercourse. This charge may consist of a single act of carnal knowledge, or a continuous series of such acts; for a day, or less time; or if continuous, it may be for a week, a month, or year, or a number of years. All the essential elements of the crime are contained in the allegations of the indictment to which you are referred, but which is not evidence.

"2. It is not incumbent on the defendant to prove his innocence. Not as a mere form, but by a substantial part of the law, he is presumed to be innocent, and not guilty, until his guilt is proven to the satisfaction of each and every one of you, beyond a reasonable doubt; and this presumption is a matter of evidence to the benefit of which the defendant is entitled. Mere suspicion, or reason to suspect, however strong a probability on the doctrine of chances, or simply a preponderance of evidence, is not sufficient to overcome the presumption of innocence, but it continues as long as there is a reasonable doubt of any fact necessary to convict; and it matters not whether the ingenuity of counsel has been instrumental in bringing about the doubt, provided it arises from the whole evidence in the case.

"3. The evidence to justify a conviction must be, beyond all reasonable doubt, consistent with the hypothesis of guilt, and inconsistent with any hypothesis of innocence that can be reasonably drawn from the evidence.

"4 It is competent to convict on circumstantial evidence, if strong enough to satisfy the jury beyond a reasonable doubt. The conviction or acquittal must be solely on the evidence, and not at all outside of the evidence. But the evidence, and the facts and circumstances proven, the jury must consider in the light and common knowledge and experience of mankind. No conviction can be had of any fact offered only as circumstantial evidence; as for instance, evidence of defendant's being in bed with his daughter.

No conviction can be had for that act simply, but it, with others proven, may be considered as circumstantial evidence of carnal knowledge, and the carnal knowledge must be proven to convict.

"5. In order to convict, the state must prove every essential ingredient of the crime charged, and every material allegation of the indictment, beyond a reasonable doubt. If this has been done, you should convict; but if it has not been done, you should acquit.

"6. A reasonable doubt, within the meaning of the law, is such a doubt as would cause a prudent and considerate man, in the graver and more important affairs of life, to pause and hesitate before acting upon the truth of the matters charged. It does not mean the possibility that the accused may be innocent, nor does it mean a chimerical doubt, or one based upon groundless conjecture; but it does mean actual substantial doubt; and if upon full consideration of all the evidence for the state, and for the defendant, your minds are in that condition that you cannot say that you feel a confidence, amounting to a moral certainty, from all the evidence in the case, that the defendant is guilty, then you have a reasonable doubt.

"7. The instructions given you, whether at the request of the state, or of the defendant, or of the court's own motion, are alike the instructions of the court, and are binding on you. They are all of the law and are not contradictory, as you will find upon careful examination."

It is not deemed important, in order to reach a conclusion on the errors assigned, to review at length the eleven additional instructions given at the request of the contending counsel. They are apparently as conflicting and as partial as was the spirit of prosecution and defense of the advocates who presented them. It is required of the court to give or to refuse instructions presented by counsel at the trial, and the court could not have improved its administration of the law in this instance, except by the refusal of

the whole series offered by counsel. As paradoxes, they tended to the confusion of the jury. Those given on the court's own motion are to be characterized as an impartial and satisfactory charge to the jury, both for the prosecution and the defense. The error now to be considered is that of the insufficiency of the evidence against the defendant. An examination of the record of the trial discloses the affairs of a family steeped in wretchedness. The father, broken down with toil and sickness at the age of fifty-six; an absent and distracted wife and mother; the son, Robert, an itinerant laborer of twenty-five; Isaac, a boy of fourteen; Thomas, still younger, and the wayward and untutored daughter, Sarah Ann, at the age of twenty-two the mother of four illegitimate children. The family seems to have been bred without the least education, either in their native tongue or the English language, and could barely give testimony in broken expressions of the latter. A homestead of eighty acres had been secured by the labor of the father, with a dwelling 16 by 22, comprising a single room for all purposes, on the first floor, and two rooms partitioned, above. The house, in all, supplied three beds, fully infested with vermin, and occupied by the six or eight members of the family. Extreme poverty, with no semblance of self-respect of its inmates, marked this home.

The father, a portion of the time for six years, was not able to do a man's work, and was occasionally bedridden of asthma, fever, or rheumatism. He alleged an injury from a fall, in rescuing property in the house set afire by his wife. There had occurred domestic broils between husband and wife and between mother and daughter, possibly owing to the latter's misconduct, but no violent disputes are related by witnesses. There is no suggestion that the father was drunken or intemperate, or of a vicious disposition. Nothing is alleged against him except the crime of the indictment. The prosecuting witness, his son Rob-

ert, testified on the trial to the fact of having seen his father and sister sleeping in bed together; that his mother was then present at home; that no complaint or accusation was ever made by her or any one at home about it; that he never saw anything wrong between them, except sleeping in the same bed, and could not tell when or how often this had occurred. Isaac, aged fourteen, was called as a witness by the state. He had no conception of the nature of an oath or a lie, or of a future state after death, but thought was the graveyard. His testimony was withdrawn.

The daughter, Sarah Ann, testified that she had borne four illegitimate children at the age of twenty-two; the first and second were dead, the third was at home, and she had an infant in arms at the trial. She accounted circumstantially for the male parentage of her children, when and where they were begotten, and by whom. She admitted that she had slept in her father's bed for a week and a half when he was sick, to give him medicine when her mother wouldn't. She denied emphatically that her father had ever, at any time, had intercourse with her. The prisoner was sworn and testified in his own defense that his daughter had slept in his bed; that he had never had intercourse with her, and corroborated her testimony as to the male parentage of her children.

In rebuttal the prosecution called neighbors as witnesses who admitted they had not been at prisoner's house more than two or three times in six or seven years, and who testified that they had not seen, or known of, the persons whom the daughter charged with the parentage of her children, to be in that neighborhood at such times as she had stated. This is the pertinent evidence in rebuttal, and these are the salient features of the prosecution. The absurdity of the last proof submitted is apparent, as it does not reach the dignity of a negative pregnant.

The prosecution was obliged to depend upon the prisoner's household for proof of the offense. It was, then,

the prosecutor's privilege to have called the absent wife of the prisoner and submit to the jury her testimony of the criminality of her husband, and the parentage of her daughter's children; and it would seem to be gross error, on the trial, to permit the argument to go to the jury that the prisoner should have called her, in his defense, to prove his innocence, and that he was responsible for her absence. The inference is strong that her testimony would have acquitted the defendant.

In *Lord v. State*, 17 Neb., 526, it was held, and consistently maintained, by reason and precedent, that a wife may be called by the state to testify against her husband on an indictment for adultery. This rule remains; and if for adultery, the more swiftly might she be called on an indictment for incest.

It is of common knowledge and experience that we sometimes observe in a refined, Christian community, the unpardonable offense of a daughter's notorious unchasity become so repugnant to the moral sense of a neighborhood that an entire family will be ostracised and driven out. It is not then surprising that the degraded condition of the present example, and of her family, should have provoked the conviction of some victim in expiation of the offense. But the law does not charge the prisoner with his degradation, but charges him with his crime; and whether victim, or felon, the penal behest of the law abhors a conviction upon a partial trial, and upon insufficient evidence.

The judgment and sentence of the district court are reversed and the cause remanded for further proceedings in accordance with law.

REVERSED AND REMANDED.

THE other judges concur.