STATE OF IOWA, Appellee, v. JOHN SHULTZ, Appellant.

INCEST:  Evidence—Good Character.  General good moral character
1  is a *defensive* circumstance in a prosecution for incest.

CRIMINAL LAW: Evidence—Motive for Prosecution. The sinister
2 motive for a criminal prosecution is relevant and material. So
held where the theory of the defense was that a charge of incest
was inspired by the very great intimacy between defendant's land-
lord and defendant's wife, and the feeling of hostility engendered
thereby between defendant and his wife and children.

CRIMINAL LAW: Trial—Argument—Due Bounds. It is not re-
3 versible error for the public prosecutor to assert, in argument to
the jury, (a) that he had no doubt of defendant's guilt, (b) that
he would not prosecute if he had such doubt, and (c) that the
court records of the state show that a large percentage of incest
cases are between father and daughter.

WITNESSES: Competency—Husband and Wife—Criminal Law. A
4 wife is a competent witness to testify against her husband charged
with incest. (Sec. 4606, Code Supp., 1913.)

WITNESSES: Examination—Leading Questions. The trial court has
5 a wide discretion as to waiving the rule of evidence which con-
demns leading questions. So held where the witness, prosecutrix
in an incest case, was 11 years of age and face to face in the court
room with the defendant, her father.

*Appeal from Poweshiek District Court.*—HENRY SILWOLD,
Judge.

THURSDAY, JUNE 29, 1916.

CONVICTION on indictment charging incest. Defendant
appeals.—*Reversed.*

*Bray, Shifflett & Wilkie,* for appellant.

*George Cosson,* Attorney General, *John Fletcher,* Assist-
ant Attorney General, and *H. G. Lyman,* County Attorney,
for appellee.

SALINGER, J.—I. The serious question in the case arises
on the exclusion of testimony on part of witnesses McNalley,
Bigler, Ryan, Fiser, Walker and Swatchue. The record is
substantially alike on all these exclusions.

1. INCEST: evi-
dence: good
character.

McNalley testified that he knew what the
defendant's general moral character was in

the vicinity in which he resided up until the time he was arrested, on January 30, 1915. He was then asked to state whether it was good or bad, and answer was excluded, on the objection that the defendant was not entitled to "general reputation except as to characteristics in the case in bar." This is substantially the record as to all the exclusions. The ruling cannot be defended. If we assume a rule which limits evidence of general reputation to characteristics involved in the charge being tried, even then this testimony should have been received. It is manifest that the general moral character of a man has logical relation to the question of whether he is, in reason, likely to be guilty of incest. Evidence that the general moral character is good has a definite place in the law of evidence. In *State v. Rodman*, 62 Iowa, at 459, the defendant introduced evidence tending to show that he had a good character. He asked an instruction applicable to this testimony, to the effect that proof of good character avails only when circumstances are relied upon to establish guilt, and that if they are "in doubt," a presumption is raised that defendant would not have committed the crime. We say that, on the authority of *State v. Kinley*, 43 Iowa 294, the instruction was properly refused; that it was really unfavorable to defendant; and that:

"Good character avails, whether the evidence be direct or circumstantial. . . . If the circumstances relied upon are 'in doubt,' a reasonable doubt of defendant's guilt existing, the jury should acquit without evidence of defendant's good character."

In *State v. Birkey*, 122 Iowa, at 103, there was an instruction that:

"Where good character is shown, it is proper to be considered in determining whether a person bearing such a character would be likely to commit the crime in question, and might be sufficient in a doubtful case to turn the scale in favor of the defendant."

We disapprove the instruction on the authority of *State v. Gustafson*, 50 Iowa 194, saying that the true rule is:

"That in passing upon the guilt or innocence of the accused, proof of good character constitutes an ingredient to be considered by the jury, without reference to the apparently conclusive or inconclusive character of the other evidence, and it is for the jury to determine what weight such evidence of character shall have with them."

In *State v. Beede*, 151 Iowa, at 703, the defendant was convicted of the crime of procuring intoxicating liquors for one who was in the habit of becoming intoxicated. He complains that he was not permitted to show good character in his defense, and we said:

"Of course, it is always permissible for the accused to show his general good character; but there was no attempt made in this case to do so. The questions asked the witnesses on character were as follows: 'You may state what his (the defendant's) habits are as to intoxicating liquors, industry, etc.' 'You may state what you know of Mr. Beede in regard to being sober, industrious.' Neither of these questions tended to show general good character, nor did they relate to any trait involved in this investigation. Beede was not on trial for being intoxicated or using intoxicating liquors."

We say, in *State v. Jones*, 145 Iowa, at 178, that evidence of good character "tends merely to negative the evidence for the prosecution tending to show defendant's guilt."

In *State v. Wolf*, 112 Iowa 458, the court charged:

"If you find from all the evidence, facts and circumstances in the case, that defendants were of good moral character, and were of good reputation for chastity in the community where they resided, before the alleged commission of the offense, then you have a right to consider such fact, if you find it to be a fact, in determining whether the witnesses who have testified to facts tending to criminate them have been mistaken, or have testified falsely or truthfully."

And we say that:

"This instruction cannot be approved upon any theory to which our attention has been directed, and clearly disregarded the rules laid down in the case we have cited, supra. The leading thought expressed therein is that evidence of character can be considered only as affecting the testimony of other witnesses. This is not its purpose, and it cannot be so limited."

In *State v. Wolf*, at page 464, we said:

"It has been the repeated holding of this and other courts that, while good character is not a complete defense to a criminal charge, it is a defensive circumstance which may be shown for the purpose of rebutting the presumption of guilt arising from circumstantial evidence (*State v. Turner*, 19 Iowa 144), and that it should be considered by the jury, in connection with all the other evidence, in determining the guilt or innocence of the accused. *State v. Donovan*, 61 Iowa 278. It may be considered as tending to show 'that men of such character would not be likely to commit the crime charged.' *State v. Ormiston*, 66 Iowa 143. It should be considered 'irrespective of whether the other evidence is conclusive or inconclusive, and it is for the jury to determine what weight such evidence shall have.' *State v. Gustafson*, 50 Iowa 194; *State v. Northrup*, 48 Iowa 583; *State v. Clemons*, 51 Iowa 274."

II. It was a theory of the defense that the prosecution was the creature of the defendant's landlord, who was inspired by very great intimacy with the wife of the defendant, and many attempts were made to show more or less remotely that testimony might be colored by this intimacy, and by resulting ill feeling between husband and wife and father and children. One of the assignments is that the court erred in refusing to permit the witnesses Imo Shultz, Maude Shultz and John Shultz to answer questions asked on behalf of the defendant, tending to show cause for the dispute between defendant and his wife immediately before she caused his

2. CRIMINAL LAW: evidence: motive for prosecution.

arrest, and tending to show the motive on part of the defendant's wife, or others, for the prosecution. We think the defense was unduly restricted by the rulings excluding testimony along these lines, and to that extent it was prevented from presenting one theory of its defense to the jury.

III. In passing upon a claim that there was misconduct in argument, we do not proceed to decision by determining how either of the members of this court might have presented the case to a jury, but limit ourselves to determining whether, measured by all reasonable standards, due bounds have been exceeded. The essence of the complaint is: First, that the prosecutor told the jury, in effect, that he had no doubt of defendant's guilt, and, in another place, that he would not be there prosecuting if he did not so believe,—that is to say, one of the attorneys said one, and the other, the other. Second, one of the prosecuting attorneys said that "the records of the state of Iowa will show that a large per cent. of the incest cases are between father and daughter."

3. CRIMINAL LAW: trial: argument: due bounds.

It is urged that this last is in violation of our holding in *State v. Guidice*, 170 Iowa 731. All that is germane in the *Guidice* case is that, while it may possibly not have been prejudicial, the county attorney should not have explained to the jury and apologized for it that the case had been brought to Mills County on change of venue, and that:

"It was of no concern to the jury how the case came to be there, and no apology was due from anyone for its being there for trial."

Against the statement asserting the belief of the prosecuting attorney, it is said that *State v. Robinson*, 170 Iowa 267, condemns what was done. Some language in the decision does. The real decision is that we will reverse where the prosecutor praises mob law and tells the jury, in substance, that, if the crime charged had been committed against the daughter of the speaker, the jury would be trying him for killing the defendant, instead of trying defendant for the

wrong done the girl. *State v. Harmann,* 135 Iowa, at 170, has the point which is in *Robinson's* case. *State v. Williams,* 63 Iowa, at 142, we think is not applicable. What was there condemned was a statement in detail of testimony that it was said would be offered, which went into the whole case without any attempt to prove substantial statements, and in which the record got into such condition that we said that:

"After a careful reading of the whole record, we were compelled to read it again, to assure ourselves of what was in the evidence as distinguished from the opening statement of the district attorney."

As to the claim that what was done here is condemned by *People v. Fielding,* 158 N. Y. 542, and a case therein cited *(Bessette v. State,* 101 Ind. 85), we have to say that we do not believe the cases are in point, and that, if it be assumed they do reverse for an argument in any way like the one under consideration, we would not be inclined to follow them.

IV. Defendant claims that there was a violation of our statutes which prohibit husband or wife from being witnesses against each other, except as the statute expressly permits, and provide that communications made by one to the other during the marriage may not be revealed in testimony (Sec. 4606, Code Supp., 1913, and Code Sec. 4607); and he cites cases which do neither more nor less than to declare what these statutes do. The basis of the complaint is that the wife of defendant was permitted to give evidence tending to support the charge that accused was guilty of incest. It suffices to say that the exact point has been ruled, and against the contention of the appellant. *State v. Chambers,* 87 Iowa, at 3, and *Compton v. State,* 13 Tex. App. 271, overruling two earlier Texas cases. The prohibition against the wife's testifying against the husband does not apply when the charge is incest. The foregoing cases hold that such case is within the statute exception, because incest is a crime committed against the wife.

4. WITNESSES: competency: husband and wife: criminal law.

V.  Much complaint is made of alleged leading and suggestive questions propounded to Imo Shultz.  Illustrative cases are:

"This relationship between your father

**5. WITNESSES: examination: leading questions.** and yourself had been talked over in the home long before the divorce suit was started, wasn't it?"

To this, the objection of defendant that it was leading and suggestive was sustained.  This and quite a number of other questions were, in strictness, "leading and suggestive." But on the waiving of the evidence rule involved, the trial judge has, of necessity, much discretion.  It appears in the record that the witness was a little over 11 years old, and the child with whom it was charged the father had had the incestuous relations.  With the witness of this age, and in this situation, and with her father sitting there before her as a defendant, we are not prepared to say that the court did not rightly exercise its descretion in the premises.

VI.  The exceptions to Instructions 15, 16 and 17 have no merit, and, at any rate, since a retrial must ensue, they may not be given again.

For the errors pointed out in Divisions I and II, the judgment must be reversed.—*Reversed.*

EVANS, C. J., LADD and GAYNOR, JJ., concur.