BERT R. SPEARMAN V. STATE OF NEBRASKA.

FILED MARCH 13, 1931. No. 27563.

G. W. Irwin and Patrick & Smith, for plaintiff in error.

C. A. Sorensen, Attorney General, C. G. Perry and F. S. Howell, contra.

Heard before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY, DAY and PAINE, JJ.

ROSE, J.

In a prosecution by the state in the district court for Morrill county, Bert R. Spearman, defendant, was accused of making a false entry in the teller's journal of the Nebraska State Bank at Bridgeport March 21, 1928, while

an officer and agent thereof, with intent to deceive the secretary of the department of trade and commerce and any person authorized by law to examine into the affairs of the Nebraska State Bank. The entry that defendant was thus charged with making was in the following form:

| "LOANS AND DISCOUNTS | CITY NATIONAL BANK |
| --- | --- |
| "Adj. City Natl. Bk. $10,056.43 | Note adj. $2,350.00 <br> "Carman paper adj. 5,775.00 <br> "C. Herzberg note 1,931.43" |

According to the information presented by the county attorney, this alleged false entry in the teller's journal stated in substance, intent and effect that the City National Bank of Lincoln had returned to the Nebraska State Bank at Bridgeport loans and discounts aggregating $10,056.43, which the former had previously received from the latter. Defendant pleaded not guilty, but was convicted and sentenced to serve a term of one year in the state penitentiary. As plaintiff in error he has presented for review the record of his conviction.

The principal question for determination is the sufficiency of the evidence to sustain the verdict and sentence. The prosecution arose under the statute relating to banks and banking. The particular section of the law which defendant was accused of violating provides:

"Any person who shall wilfully and knowingly subscribe to, or make, or cause to be made, any false statement or false entry in the books of any corporation transacting a banking business under this article, or shall knowingly subscribe to or exhibit false papers, with the intent to deceive any person or persons authorized to examine into the affairs of any such corporation, or shall make, state or publish any false statement of the amount of the assets or liabilities of any such corporation, shall be deemed guilty of a felony and upon conviction thereof, shall be imprisoned in the state penitentiary not less than one year nor more than ten years." Comp. St. 1929, sec. 8-133.

Defendant was cashier of the Nebraska State Bank at Bridgeport, hereinafter called the "state bank," and as such officer and agent was amenable to the statute quoted, but he was not guilty as charged in the information unless the state proved beyond a reasonable doubt that he "wilfully and knowingly" made, or caused to be made, the entry mentioned, that it was false, and that he made it or caused it to be made "with the intent to deceive any person or persons authorized to examine into the affairs" of the state bank. The falsity of the entry, the making of it wilfully and knowingly and the intent to deceive were all elements of the felony charged. A failure to prove any one of those elements would be fatal to a lawful conviction. In arriving at a conclusion on the sufficiency of the evidence, a critical examination of the entire record was required, including, as it did, testimony, documents and book entries relating to four other charges of which defendant was acquitted by the jury in the same prosecution.

From 1923 until April 10, 1928, defendant was actively engaged in the service of the state bank as cashier. On the latter date the department of trade and commerce took charge of it. From April 18, 1928, to July 1, 1928, it was operated by agencies of the state as a commercial bank. Being insolvent, a receiver was appointed to wind up its affairs. While defendant was its cashier, the City National Bank of Lincoln, hereinafter called the "city bank," was a correspondent of the state bank which kept a checking account in the city bank and drew drafts against it. From time to time in the regular course of the banking business between the two banks, the state bank made deposits, borrowed money, pledged notes as collateral security, rediscounted notes, received credit therefor, and otherwise participated in customary transactions between a country state bank and a city correspondent bank. The state bank was regularly examined by state bank examiners and its condition was disclosed by them and reported to the department of state in control of state banks. A year before the state bank was closed, bank examiners and

defendant knew there was a discrepancy as to the amount the state bank had on deposit with the city bank as shown by the books of each. The books of the state bank showed in its favor a balance of more than $12,000 in excess of the balance disclosed by the books of the city bank. Defendant was unable to balance his books. He was not a capable bookkeeper, but at times made book entries himself and at other times gave directions to a subordinate officer or to a regular bookkeeper.

In the condition of affairs outlined, the entry under consideration was made. Defendant defended it at the trial as an honest, truthful entry of actual banking transactions over which he had control without reference to anything shown by the books of the city bank, the intent being a partial correction of errors in his own books—errors previously known to state bank examiners and to the city bank.

Expert witnesses agree with defendant that the effect of the entry in question was to make the books of the state bank show a decrease of $10,056.43 in the balance of its deposits in the city bank. That item was made up of the three other items in the adjacent column. Each of the three items is described in the evidence.

The first item was explained by defendant as "Note adj. $2,350." According to his testimony it was composed of notes held by the state bank and found in the note case, but not previously entered on the books as assets—evidence not disproved.

The second item, "Carman paper adj. $5,775," represented an actual note executed by Carman in favor of the state bank. It had not been previously entered on the bank books. The evidence shows without dispute that Carman was a wholesale merchant engaged in shipping poultry by the carload, and that he transacted business weekly at the state bank, giving notes and drawing drafts which he attached to bills of lading. He was a witness and admitted on cross-examination by defendant that he gave a note for $5,775. He did not admit the date, but the note itself is evidence of its date which, if erroneous, does

not prove a false entry March 21, 1928. The identical note thus dated fell intó the hands, of the receiver.

The third item, "C. Herzberg note, $1,931.43," was a renewal of a former note. The proper inference is that the old note was surrendered and that the new one was an asset, as indicated by the entry on the teller's journal.

The sum of the three items is the exact amount of the item "Adj. City Natl. Bk. $10,056.43." According to defendant's understanding and intent, as shown by his testimony and his records, the entry described in the information indicated a reduction of $10,056.43 in the state bank's deposits in the city bank, a corresponding increase of assets in possession of the state bank and a correction of errors in the latter's books to that extent. If defendant did not pursue the proper method· of bookkeeping in his attempt to make a partial correction, he nevertheless, in making it, dealt with actual notes in his hands, entered the correct amounts of those assets on the teller's journal and thus made his records speak the truth. According to his own understanding and testimony in connection with the entire record, the entry was not false. There is no direct evidence of criminal intent, and a reasonable inference of a purpose to deceíve cannot properly be drawn from the evidence as a whole.

It is charged in the information, however, that the entry in the teller's journal stated in substance, intent and effect that the city bank had returned to the state bank loans and discounts aggregating $10,056.43, which the former had previously received from the latter. This is not stated on the face of the entry itself. The information so intimated, and the prosecution, in attempting to prove the charge, called experts who said in substance that technical bookkeeping implied that the entry had some connection with the city bank's books and the return of commercial paper which the city bank had previously received from the state bank in banking transactions, while notes mentioned in the entry had not been so returned. The state failed to prove that defendant so understood the entry or that he knowingly and wilfully made it with intent to de-

ceive a person authorized by law to examine into the state bank's affairs or that the entry was false as understood by defendant. The evidence does not prove that any bank examiner or the state department in charge of banking was in fact deceived. Bank examiners knew defendant's books were out of balance. There was no motive for deceit. An attempt at deception in this particular would have been futile. The evidence indicates that an official inquiry directed to the city bank would have exposed such an attempt. Criminal intent essential to a conviction was not proved.

On five separate counts of the information the prosecution was skilfully and earnestly conducted in good faith, but the evidence does not support the verdict and sentence for the making of a false entry. The judgment is reversed and the prosecution dismissed.

REVERSED AND DISMISSED.