JAMES TOTH v. STATE OF NEBRASKA.

3 N. W. (2d) 899

FILED MAY 15, 1942. No. 31197.

*Theodore L. Richling*, for plaintiff in error.

*Walter R. Johnson, Attorney General*, and *Herbert T. White, contra*.

Heard before SIMMONS, C. J., ROSE, PAINE, CARTER, MESS-MORE and YEAGER, JJ.

SIMMONS, C. J.

The defendant in this action was charged with, and tried for, the crime of incest. He was found guilty, the jury recommending leniency. Motion for a new trial was made and overruled. Defendant appeals.

He presents first the sufficiency of the evidence to sustain the conviction. The daughter testified to the act and prior occurrences. Supporting her testimony was that of her mother, wife of the defendant, and of members of the family, who testified to circumstances, acts, conduct, admissions, and statements of the defendant. His evidence, by several witnesses, consisted of a denial of the testimony of the state's witnesses, an alibi as to the time of the particular act relied upon by the state, and explanations of parts of the state's evidence and admissions made by the daughter.

The rule is that, in a prosecution for incest, the evidence of the prosecutrix need not necessarily be corroborated by an eyewitness to the particular act, but it is necessary that she should be corroborated as to the material facts and circumstances which tend to support her testimony and to establish or corroborate the truth thereof. Such corroboration may be either by direct testimony or by circumstantial evidence. *Bridges v. State*, 80 Neb. 91, 113 N. W. 1048. The evidence received by the court for the consideration of the jury has been reviewed. It is in conflict on material points. Assuming that prejudicial error did not occur in its admission, the evidence is sufficient to sustain the conviction.

Over proper objection, the wife of the defendant was permitted to testify at length regarding acts, declarations, and admissions of the defendant, and his conduct toward their daughter, covering a period of years down to and including

a conversation had with the defendant while he was in jail awaiting trial. She was further allowed to testify regarding conversations had with the daughter and members of the family with relation to the conduct of the defendant and the alleged offense. The mother and wife was the principal corroborative witness.

It is not our right or duty to pass upon the guilt or innocence of the defendant. Neither may we weigh the moral gravity of the charge made against the defendant. In this case, as in all other criminal proceedings, the state must establish its case by compliance with the rules of criminal evidence and procedure. In this case, as in all others, the defendant's rights must be safeguarded.

We are presented with the legal question as to whether or not the admission of the testimony of the wife was prejudicial error requiring a reversal of the judgment and the granting of a new trial.

Section 20-1201, Comp. St. Supp. 1941, provides that, " * * * in all cases, civil and criminal * * * The following persons shall be incompetent to testify * * * Second. Husband and wife, concerning any communication made by one to the other during the marriage, whether called as a witness while that relation subsists or afterward, except as may be otherwise provided by law. * * * " Section 20-1204, Comp. St. 1929, provides: "Neither husband nor wife can be examined in any case as to any communication made by the one to the other while married, nor shall they, after the marriage relation ceases, be permitted to reveal, in testimony any such communication made while the marriage subsisted except as is now or may be hereafter otherwise provided by law." Section 20-1203, Comp. St. 1929, applicable here, provides: "The husband can in no case be a witness against the wife, nor the wife against the husband, except in a criminal proceeding for a crime committed by the one against the other * * * ." These sections clearly set up a legislative prohibition closing the lips of the spouse "except in a criminal proceeding for a crime committed by the one against the other." The statute is clear. It means what it says.

Two questions are to be determined affirmatively before the one spouse may be a competent witness against the other. Is it a criminal proceeding? Is it for a crime committed by the one against the other? It should be remembered that in this state "No act is criminal unless the legislature has in express terms declared it to be so." *Lane v. State*, 120 Neb. 302, 232 N. W. 96. See *Behrens v. State*, 140 Neb. 671, 1 N. W. (2d) 289. Defendant was tried for a violation of section 28-906, Comp. St. 1929, which provides: "If a father shall licentiously cohabit with his own daughter, the father shall, on conviction be punished by confinement in the penitentiary for a term not less than twenty years."

That this is a criminal proceeding is clear. Is it one for a crime committed by the husband against the wife? The statute makes the offense consist of the act by the father with his daughter. From an analysis of the statute, it does not appear that the legislature declared the crime to be one against the wife.

The state, however, cites three decisions of this court which it claims authorizes the testimony of the wife against the husband in an incest case. In *Lord v. State*, 17 Neb. 526, 23 N. W. 507, an attempt was made to charge the defendant with deserting his wife and living and cohabiting with another woman in a state of adultery. The wife was permitted, over objection, to testify as to the marriage and the desertion and to identify the other woman. This court held that it was not error. It may here be noted that by amendment in 1905, Laws 1905, ch. 172 (twenty years after the decision in the *Lord* case), the legislature provided that the wife is a competent witness against the husband in desertion cases. See Comp. St. 1929, secs. 20-1203, 28-458. The case of *Lord v. State, supra,* was one that had in it the two elements, *desertion* and adultery. In reaching its conclusion, it should be noted that this court relied upon certain decisions from Iowa and Texas to which reference will later be made.

*Owens v. State*, 32 Neb. 167, 49 N. W. 226, was an incest

case. In that case *the wife did not testify*. The bill of exceptions shows that the county attorney argued to the jury that the wife was not called to testify and commented on the defendant's failure to present his wife as a witness. An examination of the briefs reveals that the defendant took the position in this court that it was the duty of the prosecutor to have called the wife as a witness. The attorney general in his brief made no mention of the matter. Under these circumstances this court held that it was the "prosecutor's privilege to have called" her; that it was gross error to permit the argument to go to the jury that the defendant should have called her; and without any discussion of authority, this court said: "In *Lord v. State*, 17 Neb. 526, it was held, and consistently maintained, by reason and precedent, that a wife may be called by the state to testify against her husband on an indictment for adultery. This rule remains; and if for adultery, the more swiftly might she be called on an indictment for incest."

*Hills v. State*, 61 Neb. 589, 85 N. W. 836, was a prosecution for bigamy. In that case the first wife signed the complaint before the examining magistrate, and later, over objection, testified as a witness for the state. This court, citing *Lord v. State, supra,* and *Owens v. State, supra,* and the Iowa cases that were cited in *Lord v. State, supra,* held: "The wife is a competent witness against the husband in a criminal prosecution for bigamy or adultery, inasmuch as these are crimes specially against her and not merely against the relation." Not called to our attention by the state is *Harris v. State*, 80 Neb. 195, 114 N. W. 168. That case was a prosecution for statutory rape upon a stepdaughter. The wife signed the complaint before the magistrate but does not appear to have testified. There this court, citing *Lord v. State, supra,* and *Owens v. State, supra,* held that the wife may sign the complaint against the husband in such a case.

The state further relies upon *State v. Chambers*, 87 Ia. 1, 53 N. W. 1090, and *State v. Shultz*, 177 Ia. 321, 158 N. W. 539, 4 A. L. R. 1071.

In *State v. Shultz, supra,* it was held that the prohibition

against the wife's testifying against the husband does not apply when the charge is incest, citing *State v. Chambers, supra,* and *Compton v. State,* 13 Tex. App. 271, 44 Am. Rep. 703. The statute set out in *State v. Chambers, supra,* is similar to our own. There the Iowa court, citing its own decisions relied upon by this court in the early opinion and following them, held that a prosecution for incest was a crime against the wife and that she was a competent witness. It is interesting here to note that the Iowa court in *State v. Shultz, supra,* cited *Compton v. State, supra,* as sustaining its position, and in *State v. Chambers, supra,* cited the same Texas case as holding the wife "was not a competent witness against her husband." The Texas cases will be discussed later.

*State v. Chambers, supra,* cited and relied upon the following cases. *State v. Hughes,* 58 Ia. 165, 11 N. W. 706, was a bigamy case. There the lawful wife, over the objection of the defendant, testified "to prove the marriage between her and the defendant." This was held not to be error, citing *State v. Sloan,* 55 Ia. 217, 7 N. W. 516, and *State v. Bennett,* 31 Ia. 24. *State v. Sloan, supra,* was a bigamy case. The first wife testified over objection. The court without citation of authority held that, "if the defendant is guilty of bigamy, he committed a crime against his wife," and that she was a competent witness. *State v. Hazen,* 39 Ia. 648, was an adultery case, where the wife's testimony was admitted, and *State v. Bennett, supra,* was followed. *State v. Bennett, supra,* was an adultery case. There the question presented was whether or not the husband was a competent witness against the wife. The court considered it as one of "first impression." The court there pointed out that the Iowa statute provided that "no prosecution for adultery can be commenced but on complaint of the husband or wife," and that that led "to the inference that the offense is rather a crime against the partner to the marital relation than against society in general," and that "the only mode of commencing the prosecution is by becoming a prosecuting witness before the grand jury, or by filing an information be-

fore a committing magistrate," and that the magistrate must examine the informant, that "the informant assumes the attitude of a witness," and that to "deny the right of the husband to testify * * * would also deny his right to commence the prosecution," and that that "would prove too much." It therefore appears that the Iowa decisions, upon which the decisions of this court rest, stem back to a decision of that court in an adultery case based upon a particular statute which the court held made the spouse a competent witness.

The Texas cases cited by this court in *Lord v. State, supra,* are *Morrill v. State,* 5 Tex. App. 447, and *Roland v. State,* 9 Tex. App. 277. In the *Morrill* case the court said, "decisions may be found which hold that adultery of the wife * * * is a crime * * * against the husband," citing only *State v. Bennett, supra. Roland v. State, supra,* relied entirely upon the *Morrill* case. However, *Compton v. State, supra,* was a charge for incest with a stepdaughter. In that case the Texas court specifically overruled the *Morrill* and *Roland* cases. It appears that Texas has repeatedly affirmed the decision in *Compton v. State.* See *Calloway v. State,* 92 Tex. Cr. 506, 244 S. W. 549. Our investigation indicates that it has been followed by other courts.

It follows that the decisions of this court upon which the state relies, rest upon adjudications from the Texas courts, which that court has overruled, and upon a decision from Iowa based upon a particular statute not similar to the one involved here. We need not now determine whether or not our cases should be modified. It is clear that they should not be construed to extend, and that they do not justify an extension of, the rule as urged by the state. This court has said: "A judge, in writing an opinion, must be permitted a certain latitude in stating his reasons for the conclusions that are reached. It quite often happens that statements are made and conclusions announced in the body of an opinion that are not necessary for a decision of the questions presented and are not directly applicable thereto. These statements are also sometimes carried in the syllabus of the case,

which is prepared by the writer of the opinion. Writers of opinions endeavor to prevent those occurrences. When they do occur, they are not considered to be controlling, although they are often helpful and likewise are often later adopted by the court by subsequent reference thereto. Because of these situations, there have evolved the rules now followed by this court, to wit: As precedents, the controlling features of an opinion are the rules of law necessarily reached and stated in determining the issues presented based upon the facts found in the record. The opinion controls the syllabus, the latter being merely explanatory of the former and having no more force and effect than statements made in the opinion upon which they are based." *Maxwell v. Hamel,* 138 Neb. 49, 292 N. W. 38.

Cases on this subject-matter are collected in 4 A. L. R. 1071, and 35 A. L. R. 138.

Our attention has been called to statements in 8 Wigmore, Evidence (3d ed.) sec. 2239. This is an authority that courts and lawyers respect. It is noted that Professor Wigmore refers to what *"ought to be* plain in law." See page 258. This text was directly considered by the supreme court of Oklahoma in *Cargill v. State,* 25 Okla. Cr. 314, 220 Pac. 64, 35 A. L. R. 133, wherein that court said: "The inadequacy of the reasons for the rule and its exceptions, as stated by Wigmore, may be sound, but we are called to look beyond these reasons. We are here called upon, not to determine the wisdom of the law, but to determine what the law is. If the law is unwise, the legislature can easily modify it. So far as possible, we are bound to follow the law as declared by the highest courts of the land, rather than that of text-writers, however eminent."

It is also noted that Professor Wigmore in his footnotes, page 259, so far as his text relates to incest, cites the Iowa and Nebraska cases analyzed herein, including *Harris v. State, supra,* with this statement, "rape under age, on the defendant's stepdaughter; *the wife admitted."* He also recognizes the overruling of the previous Texas cases by *Compton v. State, supra.*

The supreme court of Washington has held that a wife is not a competent witness against the husband in a prosecution for incest. *State v. Beltner,* 60 Wash. 397, 111 Pac. 344. Also Oklahoma in *Lacey v. State,* 27 Okla. Cr. 42, 224 Pac. 994.

The supreme court of New Jersey in *State v. Masnik,* 123 N. J. Law, 335, 8 Atl. (2d) 701, an incest case, held: "A wife or husband is precluded from testifying against each other in a criminal action except to prove the fact of marriage." Their statute is different than the ones we have been considering. It specifically provides that the husband or wife is competent, in a criminal action, to testify against the other spouse to prove the fact of marriage; that a married woman may testify against her husband when she is the complainant against him, and that unless otherwise provided one spouse is not competent to give evidence against the other in any criminal proceeding.

The supreme court of South Dakota in *State v. Burt,* 17 S. Dak. 7, 94 N. W. 409, had this same question before it in an incest case, where the wife was permitted, over objection, to testify for the state. The court there considered our decisions in *Lord v. State, supra,* and *Owens v. State, supra,* and the Iowa decisions, and came to the conclusion that this court had held that the wife was a competent witness in incest cases. The statutes are similar. The state here argues that, adultery being a crime against the wife, even more so is incest. It has likewise been suggested that by analogy, adultery and bigamy being held by some courts to be crimes against the wife, so is incest. The fallacy of this reasoning lies in the assumption that adultery is an essential element of incest. These contentions are all answered by the South Dakota court in the following language: "We cannot avoid the conclusion that the legislature intended to exclude the wife's testimony in this class of cases when its introduction is not consented to by her husband. As heretofore suggested, the general rule relating to the examination of married persons excludes the testimony of each without the consent of the other. The competency of either in the absence of

consent is the exception. * * * With reference to this statute the husband's crimes might be classified thus: (1) Those which are against persons other than his wife; (2) those which are against no particular person; and (3) those which are against his wife. It is only in actions for crimes belonging to the last-mentioned class that the wife can testify for or against her husband without his consent. *Had the defendant, in the case at bar, been a widower when the acts were done for which he is being punished, his crime would have been the same. The existence of the marital relation between the witness and the defendant did not, in any legal sense, affect or constitute any element of the crime for which he was convicted.* Should we hold that the crime charged in this action was one against the wife, it would logically follow that the rape or murder of defendant's daughter would have been a crime against her within the meaning of the statute. To hold that a wife may testify for or against her husband, without his consent, in cases of incest, would be, in effect, to establish the rule that either husband or wife may testify for or against the other, without consent, in all actions wherein either is defendant; and such was manifestly not the legislative intent. With the policy of this statutory rule the courts are not concerned. If the law should be changed, the duty of changing it devolves upon the legislature, not upon this court." (Italics supplied.) *State v. Burt, supra.* See, also, *Bassett v. United States,* 137 U. S. 496, 11 S. Ct. 165.

We follow the reasoning of the South Dakota court and other courts cited, and hold that incest is not a crime against the wife within the meaning of the statute, and that she cannot be a witness against the husband. It follows that the admission of the wife's testimony was prejudicial error requiring a reversal of the case.

The defendant submits that the state's evidence "tended to show that the alleged act * * * was done forcibly and against the will" of the daughter and that it was evident that the defendant might have been guilty of a violation of section 28-407, Comp. St. 1929, providing that carnal knowl-

edge of a daughter forcibly and against her will constituted rape, and that the jury should have been instructed that, if they believed that the act was done forcibly and against the daughter's will, they should acquit the defendant of incest. We see no merit in this contention. The state's burden was to prove the crime charged. The fact that evidence, if believed, might warrant conviction for a different offense does not alter the situation. See *Welch v. State,* 58 Ga. App. 447, 198 S. E. 810.

The defendant further complains about the admission of the evidence of several witnesses on different matters. In the main this evidence was admitted without objection and accordingly error cannot be predicated upon it.

For the error in admission of the testimony of the wife, the judgment of the district court is reversed, the verdict set aside and the cause remanded for further proceedings.

REVERSED.

ROSE, J., dissenting.

I do not concur in the opinion that testimony of a ravished daughter, a competent witness in a prosecution for incest, that her father committed that felony is insufficient to support a conviction unless corroborated by other evidence. I do not find in the Constitution or in the statutes or in the common law adopted by the legislature any law requiring such corroboration. I think that is a judicial requirement which originated in mistake or error without any foundation in law and that it has not been made law by judicial adherence to it. A statute declares:

"Every human being of sufficient capacity to understand the obligation of an oath, is a competent witness in all cases, civil and criminal, except as otherwise herein declared." Comp. St. 1929, sec. 20-1201.

I have not found therein, nor elsewhere in the law, any law that says testimony of a female child that she was ravished by her father shall not be believed by the jury or held insufficient to sustain a conviction unless corroborated by other evidence.

PAINE, J., dissenting.

The Nebraska statute, section 20-1203, Comp. St. 1929, providing that "The husband can in no case be a witness against the wife, nor the wife against the husband, except in a criminal proceeding for a crime committed by one against the other," was intended by the lawmakers, in my opinion, to protect the hallowed institution of marriage.

When the husband destroys the marital relation, and by sexual depravity defiles his own daughter, the reason for preventing husband and wife from testifying against each other disappears.

When a good mother discovers the commission of such a felony, her anguish may be more appalling and lasting than by a violent assault if made upon her by her wicked husband. While the injury inflicted upon the wife by the husband's incestual attacks upon their daughter is not specifically defined by statute as a crime against the wife, it is clearly so understood in a popular sense, and is so defined by Webster, as follows: "A crime is a violation of a public right and may also involve a violation of the rights of an individual."

The main opinion in this case fails to set out the facts, and a brief statement of the evidence will be helpful to a complete understanding of the law involved.

Defendant was charged with incest, and pleaded not guilty, but at the trial was found guilty by the jury. A motion for new trial was overruled, and the defendant was sentenced to the penitentiary for a period of 20 years, and brings his conviction to this court by petition in error.

This family resided 3½ miles northeast of Benson, in a one-room house. Mary, the prosecutrix, lived with her father and mother and three brothers and one sister. Her father and mother slept in one bed, and she and her sister slept in another bed, and the brothers slept on a davenport that opened into a bed, and they had thus lived there for 16 years. In November of 1930, while her mother was in the hospital, her father for the first time attempted to have relations with the daughter, who was then about seven or eight years old.

The mother testified to seeing the father following this

daughter into an outside toilet, and surprised her husband when he was taking indecent liberties with the daughter, then about 11 years old, and thereafter did all in her power to keep the daughter in the company of the other children at all times.

As to the particular act charged in the amended information, as occurring September 8, 1939, the daughter testified that she had been working at Abe Somberg's, 5414 Nicholas street, Omaha, and on this particular Thursday afternoon, which was her afternoon off, her father told her he would come to Somberg's the next night, which was Friday, at 7:30 p. m., and get her. "Q. What did you say to that? A. I told him I did not want him to come, and he said he was coming anyhow. Q. Did you tell him anything about coming out? A. No; he said if you don't come out, I will come in after you. Q. Why did you object during this last year? A. I just told him I did not want him to ruin my life. Q. What did you mean by that? A. By having a child or something. Q. What did he say about that? A. He said that he would take care of it, and see that I did not have one. Q. Now, on September 8, 1939, which is the night after your night off? A. Yes. Q. About what time did your father come after you? A. He came about 7:30. Q. And how do you place the time? A. I had just finished the evening dishes, and was upstairs in my room, when I saw him drive up. * * * Q. What did you do? A. I knew if I did not go out to the car he would come in after me. Q. Anyhow so you went out to the car? A. Yes; anyhow I went out to the car. * * * Q. Was it dark as yet? A. Well, it was just getting dark. Q. Where did you go? A. We went out to some side road at Seventy-second and Redmond. (Near the Danish cemetery in Douglas county.) * * * Q. What did you do after he stopped the car? A. Well, he told me to get in the back, and he got in the back too. Q. After you got in the back what did he do, and what did you do? A. Well, after I got in the back seat, he took my bloomers off, and went through with the act."

Rose Toth, the wife, over objections, gave in addition a large amount of testimony describing in the greatest detail

the complaints the daughter made to her of her father's conduct with her, and of other circumstances and facts which support this conduct. In fact, the testimony of the wife takes up 38 pages of the total bill of exceptions of 210 pages, and furnishes facts and circumstances which were amply sufficient in the minds of the jurors to lead them to return their verdict of guilty.

The father took the witness-stand, and his testimony covers some 40 pages of the bill of exceptions. He glibly denies ever having had sexual relations with his daughter at any time.

The wife, Rose Toth, being called on rebuttal, testified as follows, without any objection being made. She went to see him at the jail. "Q. Did you have any conversation with him? A. Yes, I did. Q. When was that? A. On Friday before the preliminary hearing I went up to see him. * * * Q. Was anybody with you when you went up there? A. I was alone. Q. Where was he? A. He was inside of the wires and I was on the outside in the hall and talking to him through the wires. Q. Just tell the gentlemen of the jury what he said to you and what you said to him with respect to this particular case, and his pleading guilty and about the testimony in this case. A. Well, he first asked me, 'What are you going to do with this,' and he said, 'If I get sent away are you going to keep the place and stay and wait for me?' and I said, 'What else could I do,' and he said, 'You could make it easy for me and get me less time if you do as I say,' and then he told me that I should have the girl tell that he only attempted it, he said he would be willing to plead guilty, * * * and he said it would look much better for her and it would be easier on him."

The information charged the defendant with having committed the crime of incest under section 28-906, Comp. St. 1929, reading: "If a father shall licentiously cohabit with his own daughter, the father shall, on conviction be punished by confinement in the penitentiary for a term not less than twenty years." The defendant was found guilty under this section and given the minimum sentence of 20 years.

Objection was made to the introduction of other acts in addition to the one charged, but this court has held that this evidence about his attempts to commit this crime when she was eight years old, and again when she was 11 years old, is proper, for these significant acts of undue familiarity with the daughter would lead a reasonable man to a belief in the existence of an incestuous disposition on the part of the father. See *Smothers v. State,* 81 Neb. 426, 116 N. W. 452.

Again, this court has said: "In a prosecution for rape upon a female child not previously unchaste, proof of facts and circumstances justifying a finding, independently of her own testimony, that accused had the opportunity and the inclination to ravish her may be sufficient corroboration of direct and positive evidence by her that he did so." *Whetstone v. State,* 99 Neb. 469, 156 N. W. 1049. See the incest cases of *Bridges v. State,* 80 Neb. 91, 113 N. W. 1048; *Schwartz v. State,* 65 Neb. 196, 91 N. W. 190.

The main opinion holds that, because of our statute, section 20-1203, Comp. St. 1929, set out in the first paragraph of this dissent, the wife of the defendant cannot be a witness against the husband in a charge of incest against the husband.

It is said in 70 C. J. 118: "Broadly, at common law, and under some statutes, husband and wife are incompetent as witnesses for or against each other in either civil or criminal proceedings, the rule of exclusion ordinarily applying irrespective of the kind of testimony offered, or the character of proceeding involved. But the rule of exclusion was subject to certain exceptions or modifications even at common law."

"Note, it hath been resolved by the justices, that a wife cannot be produced either against or for her husband, *qua sunt duæ animæ in carne una.*" 1 Coke's Littleton, 6 b. See 1 Blackstone Comm. 443.

Mr. Justice Sutherland, in *Funk v. United States,* 290 U. S. 371, 54 S. Ct. 212, 93 A. L. R. 1136, stated, in referring to this old rule, that the common law is not in a stage of arrested development, but is a body of law in a state of growth and change, continually developing and adapting itself to

new conditions which confront its application. Prior decisions are cited in support of the view that a court, in the face of greatly changed conditions, is not chained to ancient formulæ, and as rejecting the view that courts are powerless to declare and enforce modifications deemed to have been wrought in the common law itself by force of changed conditions. Paragraph 1 of the syllabus held that the wife of one on trial in a federal court for a criminal offense is not incompetent as a witness in his behalf. Judge Sutherland then cited the language used in *Rosen v. United States,* 245 U. S. 467, 38 S. Ct. 148: "We conclude that the dead hand of the common-law rule of 1789 should no longer be applied to such cases as we have here, and that the ruling of the lower courts on this first claim of error should be approved."

In a case in Colorado, the wife was convicted of killing her stepdaughter, Leona, aged 10, by striking her on the head with an auto tire iron and throwing her body in a lake. "Murder by wife of husband's child *held* 'crime committed by one against the other' within statute, so that husband could testify against wife." *O'Loughlin v. People* (1932) 10 Pac. (2d) 543 (90 Colo. 368).

In the case of *Wilkinson v. People,* 86 Colo. 406, 282 Pac. 257, Ernest Wilkinson was convicted and sentenced for the crime of rape by force. Defendant was the stepfather of the victim, and his wife was the mother of the victim, who was a little dwarf, 24 years of age, only four feet in height, weighed only 60 pounds, and had the mentality of a ten-year-old child. The stepfather had had sexual intercourse with her over a considerable period of time, until she informed her mother, who immediately caused his arrest. All crimes are against the public, but some crimes are particularly against individuals. A murderer commits a crime against the person whose life he destroys. The thief commits a crime against the person whose property he steals. In a review of the decisions, it appears there is conflict in respect to the question as to when a husband or wife may testify against the other under statutes similar to the Colorado statute. In Texas a late decision seems to limit a wife's right to

testify against her husband to cases of violence against her person, as in the common law. Other decisions from the Iowa and Nebraska courts extend the right to testify against her husband in any criminal action or proceeding for crimes committed against her, as bigamy and adultery. Since some private wrong or injury is included in every crime, it is evident that the word "crime," in that clause of the statute which permits the husband or wife to testify against the other in a criminal action for a crime committed against the other, means the private wrong or injury included in such public crime. The word must have such meaning or the statute is meaningless. It follows that a wife is competent to testify against her husband in a criminal action whenever she is the individual particularly and directly injured or affected by the crime for which he is being prosecuted.

In this *Wilkinson* case, I think this paragraph is especially in point: "If bigamy, and, under certain circumstances, perjury, are such crimes committed by one spouse against the other, as to render the husband or wife competent to testify against the offending party, it follows logically and inevitably that rape is also such a crime. The innocent spouse is not precluded by the statute from testifying against the accused spouse, who stands charged with this offense. The innocent spouse is a competent witness, with or without the consent of the accused spouse, and such evidence is not within the prohibition of the statute. This is particularly true in this case, where the crime was committed against the natural daughter of the wife, and therefore an outrage upon nature in its dearest and tenderest relations as well as a crime against humanity itself."

Many of the courts, in discussing this question, group the crimes of rape, adultery, bigamy and incest together, and hold that incest is governed by the same reasoning which permits a wife to testify in the other crimes, as all of them are crimes against the wife.

"It is the fact of the marital relation that makes the acts here charged constitute the aggravated crime of incest. Were it not for this relation, these acts would constitute a

much less grave offense. The crime charged is surely as much, if not more, a crime against the wife of the accused than would be the crime of adultery or bigamy. Following former decisions of this court, we hold that this is a prosecution for a crime committed by the defendant against his wife, within the meaning of section 3641, and that Mrs. Chambers was a competent witness for the state." *State v. Chambers,* 87 Ia. 1, 53 N. W. 1090, 43 Am. St. Rep. 349. See, also, annotation, 4 A. L. R. 1071.

In *State v. Shultz,* 177 Ia. 321, 158 N. W. 539 (1916), the defendant claimed that the statute had been violated in permitting the wife to testify against the husband, to support the charge that he was guilty of incest. It was held (158 N. W. 539) : "In a prosecution for incest, defendant's wife was properly allowed to give evidence tending to support the charge, despite Code, sec. 4606, and Code Supp. 1913, sec. 4607, prohibiting husband or wife from being witnesses against each other, except as the statute expressly permits."

"The common law did not fail to recognize that the rule of privilege was subject to some sort of exception. That exception was commonly placed on the ground of *Necessity,*—that is, a necessity to avoid that extreme injustice to the excluded spouse which would ensue upon an undeviating enforcement of the rule." 8 Wigmore, Evidence (3d ed.) sec. 2239.

"That adultery by one spouse is an offense against the other is conceded in morals, and ought to be plain in law. The argument may be made, to be sure, that adultery by the husband * * * was not a crime at common law, and ought not to be a crime; but that is a mere evasion; whenever it is made a criminal offense, then if any crime at all can be a crime, not only against the state, but also a 'crime against the other,' adultery is certainly one of those crimes. So, too, is incest or rape. So, equally, is bigamy. Nevertheless, judges have been found who dispute this; it has been argued, in skilful word-fencing, that a bigamous marriage is a crime 'against the marital relation,' but not 'against the wife.' " 8 Wigmore, Evidence (3d ed.) sec. 2239.

"The rule that husband and wife are incompetent as wit-

nesses for or against each other has been substantially whittled down by judicial interpretation and by statute providing that a husband and wife shall not be witnesses against each other without the other's consent, except in suits for divorce and in cases of prosecution for bigamy and where the cause of action grows out of a personal injury or wrong done by one to the other. Comp. Laws 1929, sec. 14221." *People v. Zabijak,* 280 N. W. 149 (285 Mich. 164).

Again, in a Colorado case it is said: "Our statute does not limit the right of the husband or wife to testify to criminal prosecutions for crimes involving personal violence, either actual or constructive; the language is unqualified that the husband or wife may testify against the other 'in a criminal action or proceeding for a crime committed by one against the other.' This language is broad enough to include any crime, whether of violence to the person, or other crime committed by the husband or wife directly affecting the other." *Dill v. People,* 19 Colo. 469, 36 Pac. 229, 41 Am. St. Rep. 254. See, also, *Schell v. People,* 65 Colo. 116, 173 Pac. 1141. See very full and able discussion of the entire question in the dissenting opinion of Judge Poffenbarger in *State v. Woodrow,* 58 W. Va. 527, 52 S. E. 545, 2 L. R. A. n. s. 862, in which a father was convicted of shooting his baby, Ruth, 14 months of age, while held in her mother's arms, and the conviction was reversed because the mother was allowed to testify against her husband. See, also, annotation following *State v. Boyd,* 2 Hill (S. Car.) 288, 27 Am. Dec. 376.

While newspapers upon moral grounds usually omit accounts of this revolting crime of incest, yet it is fairly common in our state. In preparing the facts for this dissenting opinion, I received from Neil Olson, the warden of the Nebraska penitentiary, a detailed history of every man sentenced for the crime of incest, as shown by the records. On May 16, 1887, a Hamilton county farmer, 35 years of age, appears to be the first, and the last in the list is a laborer from Polk county, 50 years of age, sentenced November 17, 1941, and altogether 68 men have been sentenced for this crime. The record shows that all but six were American

citizens, only one was a Negro, and one an Indian.

Would the law enforcement officers have been able to bring about the conviction of the men guilty of this crime if the wives had not been permitted to testify?

For many years this question has been considered settled in Nebraska. The writer of this dissent was district judge for 14 years, and held court in 30 different counties in Nebraska, and, in his opinion, few of the convictions by the jury, or pleas of guilty secured, in incest cases would have been brought about except for the testimony of the mothers in each of the cases of which he has had knowledge.

Why has it been considered settled that a mother could testify against the father who had ravished their daughter?

Because this matter has been before the Nebraska court several times. In the case of *Lord v. State,* 17 Neb. 526, 23 N. W. 507, it was held: "Under a statute permitting a husband or wife to testify in a criminal proceeding for a crime committed by one against another, *Held,* That on the trial of a husband on an indictment for adultery, the wife was a competent witness against him." Judge Maxwell said: "And in our view, it was intended by the legislature to include the offense here charged; and the ends of justice will be best subserved by permitting the wife to testify."

In the case of *Owens v. State,* 32 Neb. 167, 49 N. W. 226, a conviction was reversed by the supreme court on the ground that the evidence was insufficient as the daughter in that case denied that she had had intercourse with the father, and the only testimony offered was that of neighbors; but although it may be argued that it is dictum, Cobb, C. J., uses the following pertinent language: "In *Lord v. State,* 17 Neb. 526, it was held, and consistently maintained, by reason and precedent, that a wife may be called by the state to testify against her husband on an indictment for adultery. This rule remains; and if for adultery, *the more swiftly might she be called on an indictment for incest.*" (Italics mine.)

In *Hills v. State,* 61 Neb. 589, 85 N. W. 836, which was a prosecution for bigamy, a complaint was signed by the wife

of the defendant, and she testified over objection, and Norval, C. J., says: "The wife is a competent witness against the husband in a criminal prosecution for bigamy or adultery, inasmuch as these are crimes specially against her and not merely against the relation."

In adultery a husband has intercourse, usually with a mature woman, not his wife, and if many courts have held it was proper for his wife to testify against him in such a case, because it was a crime committed against her, much greater is the reason, supported by morality and law, for allowing her to testify when her own husband has ravished their own daughter.

An opinion has recently been released in this court entitled *Murphy v. Travelers Ins. Co., ante,* p. 41, 2 N. W. (2d) 576, involving X-ray burns upon the hand of a dentist. This case was given exhaustive study for months after it was argued on April 7, 1941, and the decision rendered is supported only by a minority of the courts, but it was concluded that these decisions presented better reasoning, and the decision of this court did not follow the opinion of a majority of the states which reached a contrary conclusion.

It is my opinion that, in the case at bar, the crime of incest, committed by a husband upon his own daughter, is clearly a crime committed against the mother of that daughter; his own wife, and that it comes within the exception provided in section 20-1203, Comp. St. 1929, even though the majority of courts may hold to the contrary.

By the main opinion, this case is reversed because the mother was allowed to testify against the father, although section 29-2308, Comp. St. 1929, states clearly that no judgment shall be set aside for the improper admission of evidence if this court shall consider that no substantial miscarriage of justice has occurred. The history of this law was set out at length in my dissent in *Vinciquerra v. State,* 127 Neb. 541, 256 N. W. 78, in which the defendant was convicted of murder, and sentenced to 15 years, and such conviction was reversed by this court because the court, among other things, failed to give a proper instruction to the jury

on the sufficiency of circumstantial evidence. The case was retried in Douglas county, but, as often happens in second trials, the same evidence could not then be procured because of the lapse of time, and at the second trial the jury on October 25, 1934, returned a verdict of not guilty, and the defendant was released and discharged.

It is my opinion that the defendant in the case at bar had a fair trial, that it was proper under our statute for the wife and mother to testify to the facts of the crime he committed, and that this court should have announced the law to be as follows:

(1) Section 20-1203, Comp. St. 1929, provides in part: "The husband can in no case be a witness against the wife, nor the wife against the husband, except in a criminal proceeding for a crime committed by one against the other." Under this section, the wife of the accused has been allowed to testify against her husband in prosecutions of cases of rape, adultery, bigamy and incest, on the ground that each of these crimes was a crime against the wife.

(2) Our Nebraska statute (Comp. St. 1929, sec. 20-1203) does not limit the right of the husband or wife to testify to criminal prosecutions for crimes involving personal violence, either actual or constructive; the language is unqualified that the husband or wife may testify against the other "in a criminal proceeding for a crime committed by one against the other." This language is broad enough to include any crime, whether of violence to the person, or other crime committed by the husband or wife directly affecting the other.

(3) Incest committed by a father, ravishing his own daughter, is a crime against his wife, the mother of said daughter, and the wife is a competent witness against him, under our Nebraska law.

ROSE, J. I agree with Judge Paine that the wife was a competent witness in this case and I think the conviction should be affirmed.